**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Attorneys for Mr. Al Bihani

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**(HONORABLE RICHARD J. LEON)**

| | |
|---|---|
| GHALEB NASSAR AL BIHANI, )<br>)<br>Petitioners, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, *et al.*, )<br>)<br>Respondents. )<br>_____ ) | Civil Action Nos.    05-CV-1312-RJL<br><br><br>NOTICE OF MOTION AND MOTION FOR AN ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL WITH ADVANCE NOTICE OF ANY REMOVAL FROM GUANTANAMO |

   Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. §1651, Mohabat Khan and Ghaleb Nassar Al Bihani, (hereinafter "Petitioners") respectfully move for an order requiring Respondents to provide counsel with advance notice of any intended removal of Petitioner from Guantanamo Bay Naval Base in Cuba.

   On information and belief, Respondents have contemplated or are contemplating removal of Petitioners from Guantanamo to foreign territories for torture or indefinite imprisonment without due process of law.

   Counsel for petitioners have requested access to their clients, but are yet unable to visit them at Guantanamo Bay in Cuba. Counsel have been informed that security clearance will take up to 10 weeks to complete, and even then access to Mr. Khan and Mr. Al Bihani is not guaranteed and will have to be arranged. Therefore, Counsel files this motion in the above matter on behalf of Mr. Khan and Mr. Al Bihani.

Petitioners, through counsel, request advance notice to enable their counsel to contest any removal from Guantanamo and preserve the jurisdiction of the Court in this matter.

## I.

## STATEMENT OF FACTS[1]

Petitioner Khan is a citizen of Afghanistan from Gardaiz, Afghanistan. Petitioner Al Bihani is a citizen of Yemen. They are both being detained as an "enemy combatants" at Camp Delta in Guantanamo Bay Naval Base in Cuba. Both deny being an "enemy combatant" and contend that they are being detained in violation of the Constitution, treaties and laws of the United States.

Petitioners in the instant case have reason to fear they will be transferred to a country where they will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times* and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to a recent article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'"[2] According to the *Washington Post*

---

[1] Without access to Mr. Khan or Mr. Al Bihani, the facts included here are scant and unverified. Counsel has not received any discovery in this matter. Therefore, Counsel reserves the right to, at a later date, amend any statement of facts or assertions once contact is established between clients and Counsel and discovery is received in this matter.

[2] Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, at http://www.newyorker.com/fact/content/?050214fa_fact6, ¶ 7.

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said.  In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.[3]

The countries to which detainees may be brought are known to practice torture.[4]

According to recent news accounts, Guantánamo detainee Mamdouh Habib was rendered to Egypt by the United States *before* being moved to Cuba.  During his six months in Egyptian custody, Mr. Habib was allegedly tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod."  And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . .  Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.[5]

The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of torture.  In a report released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent."[6]

---

[3] Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, [2002], at A1; *see also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1.

[4] *See*, *e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture,* L.A. Times, Jan. 13, [2005], at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

[5] Mayer, *Outsourcing Torture* at [¶ 54]

[6] Dep't of State, *Country Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c).

Petitioners also have reason to fear that they will be transferred into the custody of the government of Afghanistan, Yemen, or a third country for continued illegal detention without due process of law. On information and belief, a number of detainees have been removed to countries – including Pakistan and Kuwait – where they have been imprisoned and denied access to the courts. Moreover, recent news reports indicate that the United States government has contemplated transferring "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries."[7]

## IV.

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." SEC v. Vision Communications, Inc., 74 F.3d 287, 291 (D.C. Cir. 1996); Envtl. Def. Fund v. EPA, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioner's request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner are likely to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. See Al-Fayed v. CIA, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Petitioner stands to suffer immeasurable and irreparable harm – from to torture to possible death – at the hands of a foreign government. Transfer to another country, even if "only" for continued imprisonment, also circumvents Petitioners' right to adjudicate the legality of their detention in this Court. By contrast, Respondents, who have already held Petitioners for several years, are asked only to

---

Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.

4

provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo.  Respondents can suffer no conceivable harm from complying with such a request.

Petitioner is likely to succeed on the merits of his claims.  Petitioner has properly invoked the jurisdiction of this Court.  See Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004).  In this District, Judge Green has already ruled that detainees in similar circumstances to Petitioners have stated actionable claims under the Due Process Clause and the Geneva Conventions.  For the United States Government to remove Petitioners to countries that would afford no such protections would be to flout Judge Green's ruling and defeat the Court's jurisdiction.  Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also in the International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioner from the Court's jurisdiction.  No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

## IV.
## CONCLUSION

For the reasons discussed above, the motion should be granted.

Dated:  December 5, 2005                              Respectfully submitted,


                                                      /s/
                                                      **STEVEN F. HUBACHEK**
                                                      Federal Defenders
                                                      225 Broadway, Suite 900
                                                      San Diego, CA 92101-5030
                                                      (619) 234-8467  (tel)
                                                      (619) 687-2666  (fax)
                                                      e-mail: Steven_Hubachek@fd.org

| | |
|---|---|
|1| |
|2|              /s/<br>**ELLIS M. JOHNSTON**<br>Federal Defenders<br>225 Broadway, Suite 900<br>San Diego, CA 92101-5030<br>(619) 234-8467  (tel)<br>(619) 687-2666  (fax)<br>e-mail: Ellis_Johnston@fd.org|

              /s/
**HEATHER R. ROGERS**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail: Heather_Rogers@fd.org


              /s/
**ZAKI ZEHAWI**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail: Zaki_Zehawi@fd.org

Counsel for Petitioners