# IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **GHALEB NASSAR AL BIHANI,** | ) | |
| Guantánamo Bay Naval Station, | ) | |
| Guantánamo Bay, Cuba | ) | CIVIL ACTION |
|       Petitioner | ) | |
| | ) | |
|     v. | ) | |
| | ) | No:  05-cv-01312 |
| **GEORGE W. BUSH** | ) | |
|     President of the United States | ) | |
|     The White House | ) | JUDGE RICHARD J. LEON |
|     1600 Pennsylvania Avenue, N.W. | ) | |
|     Washington, D.C. 20500; | ) | |
| | ) | |
| **DONALD RUMSFELD** | ) | |
|     Secretary, United States | ) | |
|     Department of Defense | ) | |
|     1000 Defense Pentagon | ) | |
|     Washington, D.C. 20301; | ) | |
| | ) | |
| **ARMY BRIG. GEN. JAY HOOD** | ) | |
|     Commander, Joint Task Force - GTMO | ) | |
|     APO AE 09360; and | ) | |
| | ) | |
| **ARMY COL. MIKE BUMGARNER** | ) | |
|     Commander, Joint Detention | ) | |
|     Operations Group - JTF-GTMO | ) | |
|     APO AE 09360, | ) | |
| | ) | |
|     Respondents | ) | |

_____)

## CIVIL COMPLAINT & FIRST AMENDED PETITION
## FOR WRIT OF HABEAS CORPUS

      Petitioner seeks relief under the Great Writ and the laws of the United States.  Petitioner

is a citizen of Yemen, who filed a pro se request for habeas corpus relief with this Court, which

was docketed on June 30, 2005.  Petitioner is a civilian who the President of the United States

has wrongly classified as an "enemy combatant."  Respondents are detaining Petitioner virtually

incommunicado in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo Bay").  Respondents are detaining Petitioner without lawful basis, without charge, without access to counsel, and without affording him any fair process by which he might challenge his detention.  Respondents are holding Petitioner under color and authority of the executive branch, in violation of the Constitution, laws and treaties of the United States, and in violation of customary international law and fundamental principles of human rights.  Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court a lawful basis for his detention.  This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, the laws and usages of war, and the Executive Order of November 13, 2001, entitled Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism ("Executive Order"), 66 Fed. Reg. 57,833 (Nov. 13, 2001), Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, United States Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for, or have been charged with, maintaining the custody and control of the detained prisoners at Guantánamo Bay, including Petitioner.

## I. JURISDICTION

1.    Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1), (c)(3) and 2242. Respondents are detaining Petitioner "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(1), (c)(3).  Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 701 *et seq.*; and Articles I and II and the Fifth, Sixth, and Eighth Amendments of the United States Constitution.  Because he seeks declaratory relief, Petitioner also relies on Federal Rule of Civil Procedure 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other legal relations of the parties herein under 28 U.S.C. § 2201; to effectuate and enforce declaratory relief by all necessary and proper means under 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction; and to issue all writs necessary or appropriate in aid of the Court's jurisdiction under 28 U.S.C. § 1651.

## II.  PARTIES

3.      Upon information and belief, Petitioner Ghaleb Nassar Al Bihani, is presently incarcerated at Guantánamo Bay, and held in Respondents' unlawful custody and control.  He is believed to be a citizen of Yemen.

4.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the armed forces of the United States.  Respondents are detaining Petitioner pursuant to President Bush's authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order.  President Bush is responsible for Petitioner's unlawful detention.  Petitioner sues him in his official capacity.

5.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to either the Executive Order or the President's authority as Commander-in-Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining custody and control over Petitioner, and is responsible for doing so.  Petitioner sues him in his official capacity.

6.      Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the task force that has control of the detention operation at Guantánamo Bay.  He has supervisory responsibility for Petitioner.  Petitioner sues him in his official capacity.

7.      Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the United States

facility where Respondents are currently holding Petitioner.  He is the immediate custodian responsible for Petitioner's detention.  Petitioner sues him in his official capacity.

8.     Respondents are directly responsible for any activities undertaken by, or under the supervision of, any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo Bay.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other agents or employees of the United States government ("United States" or "government"), or contractor employees.

### III.  STATEMENT OF FACTS

#### A.  The Petitioner

9.     Upon information and belief, Petitioner is not, and never was, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition the United States has adopted in any civil or military proceedings.  Upon information and belief, Petitioner is not, and never has been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there."  Hamdi v. Rumsfeld, 542 U.S. 507, 124 S. Ct. 2633, 2639 (2004).

10.     Upon information and belief, Petitioner did not take up arms against United States forces, and did not support forces hostile to the United States or engage in armed conflict with the United States.  Nevertheless, Petitioner was taken to Guantánamo Bay.

11.     Petitioner seeks to enforce his rights to a judicial determination of the lawfulness of his detention.

12.     The United States has not shown that Petitioner was a member of the Taliban, of the armed forces of Afghanistan, or of Al Qaeda prior to his detention.  Nor has it shown that Petitioner committed any violent acts against any American person or property.  Furthermore, the

United States has failed to show that Petitioner had any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, in the ensuing armed conflict, or in any acts of international terrorism that the United States attributes to Al Qaeda or to any other terrorist group. Petitioner remains incarcerated at Guantánamo Bay, a territory over which the United States exercises exclusive jurisdiction and control.

13. The United States has not afforded petitioner any procedures that satisfy his rights under the most fundamental common law notions of due process, the United States Constitution, the laws and treaties of the United States, or customary international law.

### B. The Joint Resolution

14. In the wake of the September 11, 2001, attacks, the United States, at the direction of President Bush, began a military campaign in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force ("Joint Resolution"), Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001).

15. Petitioner is not properly detained pursuant to President Bush's authority as Commander-in-Chief, the laws and usages of war, or the Joint Resolution.

16. Upon information and belief, Petitioner is not, and never was, a member of Al Qaeda or any other terrorist group. Prior to his detention, he did not commit or espouse any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism that the United States attributes to Al Qaeda or any other terrorist group. Because Petitioner did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief, the laws and usages of war, or to the detention order that President Bush issued.

5

### C.  The Executive Order

17.     On November 13, 2001, President Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone President Bush has "reason to believe":

i.      is or was a member of the organization known as al Qaida;

ii.     has engaged in, aided or abetted, or conspired to commit, acts of international
terrorism, or acts in preparation therefor, that have caused, threatened to cause, or
have as their aim to cause, injury to or adverse effects on the United States, its
citizens, national security, foreign policy, or economy; or

iii.    has knowingly harbored one or more individuals described in
subparagraphs (i) and (ii) . . . .

See Executive Order, supra, § 2.  Congress neither authorized nor directed the Executive Order,

and the Executive Order is beyond the scope of the Joint Resolution.

18.     The Executive Order purports to vest President Bush with the sole discretion to

identify individuals who fall within its purview.  It establishes no standards governing the

exercise of President Bush's discretion.  The Executive Order contains no notification provision

for informing a detainee of the charges he may face.  The Executive Order authorizes detainees to

be confined indefinitely without charges.  It contains no provision for a detainee to be notified of

his rights under domestic and international law; nor does it provide the right to counsel, the right

to notice of consular protection, or the right to consular access at the detainee's request.  It

provides no recourse to a neutral tribunal to review the basis for or the legality of a detainee's

continued detention, and contains no provision for recourse to an Article III court.  In fact, the

Executive Order purports expressly to bar review by any court.  See Executive Order, supra,

§ 6(b)(2) ("the individual shall not be privileged to seek any remedy or maintain any proceeding .

. . in any court of the United States, or any state thereof").  In sum, the Executive Order

authorizes indefinite and unreviewable detention, based on nothing more than President Bush's

written determination that an individual is subject to its terms—a determination which, because it

is not reviewable by any court, may be based on false evidence, evidence obtained through

torture, or even no evidence at all.

19.    The Executive Order was promulgated in the United States and in this judicial district.  The decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district.  The decision to detain Petitioner at Guantánamo Bay was made in the United States and in this judicial district.  The decision to continue detaining Petitioner was made, and is being made, by Respondents in the United States and in this judicial district.

20.    The United States has not shown that President Bush has certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

21.    The United States has not shown that Petitioner was detained lawfully, and is detained lawfully, pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or the laws and usages of war, in that Respondents have denied Petitioner the process due to him under, among other things, the common law and the Due Process Clause of the Fifth Amendment to the United States Constitution, domestic civil and military law, and international law.

### D.  Guantánamo Bay

22.    Upon information and belief, on or about January 11, 2002, the United States military began transporting prisoners to Camp X-Ray at Guantánamo Bay.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo Bay. Currently, prisoners are housed in Camp Delta, Camp V, an additional maximum-security interrogation and detention center, and in Camps I, II, III and IV.

23.    Prisoners incarcerated at Guantánamo Bay are entitled to test the legality of their detention in the federal courts.  Rasul v. Bush, 542 U.S. 466, 124 S. Ct. 2686, 2698 (2004).

24.    On a date unknown to counsel for Petitioner, but known to Respondents, the United States transferred Petitioner to Guantánamo Bay, where, upon information and belief, he currently resides in Respondents' custody and control.

### E.  The Conditions of Detention at Guantánamo Bay

25.      Respondents have held Petitioner at Guantánamo Bay virtually incommunicado.

26.      Upon information and belief, Respondents have subjected Petitioner to interrogation, threats, and "stress and duress" techniques, such as sleep deprivation, forced sitting for hours, and "environmental manipulation," including exposure to extreme heat or cold.

27.      Upon information and belief, Respondents have forced, or will force, Petitioner to provide involuntary statements to Respondents' agents at Guantánamo Bay.  Furthermore, agents of the United States Departments of Defense and Justice and the Central Intelligence Agency have interrogated, or will interrogate, Petitioner repeatedly, even though the United States has neither charged Petitioner with an offense, nor notified him of any pending or contemplated charges.  Petitioner has not appeared before a lawful military or civilian tribunal, and Respondents have not provided Petitioner with access to counsel or the means to contact and secure counsel.  Petitioner has not been adequately informed of his rights under the United States Constitution, the regulations of the United States military, the Geneva Conventions and Protocols, available at http://www.genevaconventions.org (last visited Dec. 1, 2005), the International Covenant on Civil and Political Rights, Dec. 16, 1966, 999 U.N.T.S. 171, the American Declaration of the Rights and Duties of Man, O.A.S. Res. XXX, adopted by the Ninth International Conference of American States (1948), reprinted in Basic Documents Pertaining to Human Rights in the Inter-American System, OEA/Ser.L.V/II.82 doc.6 rev.1 at 17 (1992), the 1954 Convention Relating to the Status of Refugees, Apr. 22, 1954, 189 U.N.T.S. 150, or customary international law.  Indeed, Respondents have taken the position that detainees, such as Respondent, should not be informed of these rights.  As a result, Respondents have denied Petitioner any ability to protect or to vindicate his rights under domestic and international law.

28.    Upon information and belief, the United States has held detainees at Guantánamo Bay under conditions that violate their constitutional and international rights to dignity and freedom from torture, and from cruel, inhuman, and degrading treatment or punishment.[1]

29.    Many of these violations—including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror—are actual interrogation techniques that the most senior Department of Defense lawyer has approved for use at Guantánamo Bay.  See "Action Memo" from William J. Haynes II, General Counsel, Department of Defense, to Secretary of Defense (Nov. 27, 2002), available at http://www.defenselink.mil/news/Jun2004/d20040622doc5.pdf (last visited Dec. 1, 2005); Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations (Mar. 6, 2003), available at http://www.cdi.org/news/law/pentagon-torture-memo.pdf (last visited Dec. 1, 2005).

---

[1] See, e.g., Amnesty International, Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power (hereinafter, "Guantánamo and Beyond"), at 830-115, Ch. 12-13, AMR 51/063/2005 (May 13, 2005), available at http://web.amnesty.org/library/Index/ ENGAMR510632005 (last visited Nov. 29, 2005); Physicians for Human Rights, Break Them Down: Systematic Use of Psychological Torture by US Forces, Ch. 3 (2005), available at http://www.phrusa.org/research/torture/pdf/psych_torture.pdf (last visited Dec.1, 2005); United Nations Press Release, United Nations Human Rights Experts Express Continued Concern About Situation of Guantanamo Bay Detainees (Feb. 4, 2005), available at http://www.unhchr.ch /huricane/huricane.nsf/0/F3AF690DC18BFFD6C1256F9E0034AC95?opendocument (last visited Nov. 29, 2005); International Committee of the Red Cross, Press Release, The ICRC's Work at Guantanamo Bay (Dec. 1, 2004); International Committee of the Red Cross, Operational Update, US Detention Related to the Events of September 11, 2001 and Its Aftermath—the Role of the ICRC (July 26, 2004), available at http://www.icrc.org/Web/Eng/ siteeng0.nsf/iwpList454/541ACF6DC88315C4C125700B004FF643 (last visited Dec. 1, 2005); Amnesty International, United States of America Dignity Denied: Torture and Accountability in the "War on Terror", at 22 (Oct. 27, 2004), available at http://www.icrc.org/Web/Eng/siteeng0. nsf/iwpList454/541ACF6DC88315C4C125700B004FF643 (last visited Dec. 1, 2005); see also Barry C. Scheck, From the President:  Abuse of Detainees at Guantanamo Bay, The Nat'l Assoc. of Criminal Def. Lawyers Champion, Nov. 2004, at 4-5, available at http://www.nacdl.org/ public.nsf/01c1e7698280d20385256d0b00789923/01a2426440d05a4285256f6a00558f34?Open Document (last visited Dec. 1, 2005).

30.     Approved interrogation techniques appear to have resulted in the death of detainees in Respondents' custody in Iraq, and in abuse of detainees at Bagram Air Force Base. See Tim Golden, In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths, N.Y. Times, May 20, 2005; Iraqi Died While Hung from Wrists, Assoc. Press, Feb. 17, 2005, available at http://www.washingtonpost.com/wp-dyn/articles/A32914-2005Feb17_2.html (last visited Dec. 1, 2005); Suzanne Goldenberg & James Meek, Papers Reveal Bagram Abuse, The Guardian, Feb. 18, 2005, available at http://www.guardian.co.uk/afghanistan/story/ 0,1284,1417396,00.html (last visited Dec. 1, 2005).

31.     Some military lawyers have objected to and tried to stop the abusive interrogations at Guantánamo Bay.  James Gordon Meek, At War With GITMO Grilling: Military Counsel Fought But Lost, N.Y. Daily News, Feb. 13, 2005, at 20 ("Judge Advocates—uniformed legal advisers known as JAGs who were assigned to a secret war crimes task force—repeatedly objected to aggressive interrogations by a separate intelligence unit at Camp Delta, where Taliban and Al Qaeda suspects have been jailed since January 2002. . . . . The military lawyers' actions had never been disclosed and are the first known cases of lower-level officers resisting interrogations at the Cuban camp that might constitute torture.").

32.     Upon information and belief, Respondents contend that Petitioner should not be informed of his rights under the laws or Constitution of the United States, the regulations of the United States military, the Geneva Conventions and Protocols, supra, the International Covenant on Civil and Political Rights, supra, the American Declaration on the Rights and Duties of Man, supra, and the 1954 Convention Relating to the Status of Refugees, supra, or customary international law.  Upon information and belief, Petitioner thus lacks awareness of his rights under domestic and international law.

33.     The International Committee of the Red Cross ("ICRC") has charged the United States military with intentionally using psychological and physical coercion on prisoners at Guantánamo Bay during interrogations that were "tantamount to torture."  See Neil A. Lewis,

Red Cross Finds Detainee Abuse in Guantanamo, N.Y. Times, Dec. 1, 2004, at A1.  The report includes claims that doctors and other medical workers at Guantánamo Bay participated in planning interrogations.  Id.; see also M. Gregg Bloche & Jonathan H. Marks, When Doctors Go to War, N.E. J. Med., Jan. 6, 2005, at 3-4.  Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo Bay have appeared, including Federal Bureau of Investigation memos detailing torture and "highly aggressive interrogation techniques," including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music.[2]  The Associated Press has reported allegations that female interrogators at Guantánamo Bay have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to "break" Muslim detainees.  Gitmo Soldier Details Sexual Tactics, Assoc. Press, Jan. 27, 2005, available at http://www.washingtonpost.com/wp-dyn/articles/ A41749-2005Jan27_3.html (last visited Dec. 1, 2005); see also Eric Saar & Viveca Novak, Inside the Wire: A Military Intelligence Soldier's Eyewitness Account of Life at Guantanamo (Penguin Press 2005); Guantánamo and Beyond, supra, at 89-90, Ch. 12.

---

[2] See, e.g., Carol D. Leonnig, Guantanamo Detainee Says Beating Injured Spine:  Now in Wheelchair Egyptian-Born Teacher Objects to Plan to Send Him to Native Land, Wash. Post, Aug. 13, 2005, at A18, available at http://www.washingtonpost.com/wp-dyn/ content/article/2005/08/12/AR2005081201624.html?nav=rss_world (last visited Dec. 1, 2005); Guantánamo and Beyond, supra, at 83-115, Ch. 12-13; Guantánamo: An Icon of Lawlessness, Amnesty International, at 3-5 (Jan. 6, 2005), available at http://web.amnesty.org/library/Index/ ENGAMR510022005 (last visited Dec. 1, 2005); see also Neil A. Lewis, Fresh Details Emerge on Harsh Methods at Guantánamo, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, Further Detainee Abuse Alleged:  Guantanamo Prison Cited in FBI Memos, Wash. Post, Dec. 26, 2004, at A1, available at http://www.washingtonpost.com/wp-dyn/articles/A25962-2004 Dec25.html (last visited Dec. 1, 2005); Neil A. Lewis and David Johnston, New F.B.I. Memos Describe Abuses of Iraq Inmates, N.Y. Times, Dec. 21, 2004, at A1, Dan Eggen and R. Jeffrey Smith, FBI Agents Allege Abuse of Detainees of Guantanamo Bay, Wash. Post, Dec. 21, 2004, at A1, available at http://www.washingtonpost.com/wp-dyn/articles/A14936-2004 Dec20.html; Neil A. Lewis, F.B.I. Memos Criticized Practices at Guantanamo, N.Y. Times, Dec. 7, 2004, at A19.

34.     In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture incidents—such as aggressive use of dogs, sexual humiliation, stress positions, and sense deprivation—were pioneered at Guantánamo Bay.  See Josh White, Abu Ghraib Dog Tactics Came From Guantanamo:  Testimony Further Links Procedures at 2 Facilities, Wash. Post, July 27, 2005, at A14, available at http://www.washingtonpost.com/wp-dyn/content/article/2005/07/26/AR2005072601792.html (last visited Dec. 1, 2005); and Josh White, Abu Ghraib Tactics Were First Used at Guantanamo, Wash. Post, July 14, 2005 at A1, available at http://www.washingtonpost.com/wp-dyn/content/article/2005/07/13/AR2005071302380.html (last visited Dec. 1, 2005).

35.     Upon information and belief, the unlawful and unconstitutional interrogation techniques that Respondents have used at Guantánamo Bay include, not only physical and psychological abuse, but also other impermissible conduct contrary to due process requirements, including having agents of the United States impersonate lawyers for the detainees during interrogations.  See Toni Locy, Lawyers:  Detainees' Cases Stalled in the Legal System, USA Today, Jan. 26, 2005, available at http://www.usatoday.com/news/washington/2005-06-26-detainees-court_x.htm (last visited Dec. 3, 2005).  Furthermore, Respondents have instructed military defense lawyers to materially limit their representation of detainee clients in a manner disfavorable to the clients, a practice that violates due process.  See David Johnston & Neil Lewis, Lawyer Says Military Tried To Coerce Detainee's Plea, N.Y. Times, June 16, 2005 at A25 (Late Ed.).

36.     Respondents, acting individually or through their agents, have stated that the limitations that apply to coercive interrogation techniques used by United States military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the Central Intelligence Agency or other entities controlled by President Bush.  See, e.g., Guantánamo and Beyond, supra at 27-43, Ch. 5.  Eric Lichtblau, Gonzales Says '02 Policy on Detainees Doesn't Bind C.I.A., N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and Charles

12

Babington, <u>Torture by U.S. Personnel Illegal, Gonzales Tells Senate</u>, Wash. Post, Jan. 19, 2005, at A4, <u>available</u> at http://www.washingtonpost.com/wp-dyn/articles/A19264-2005 Jan18.html (last visited Dec. 1, 2005).

37.    In published statements, President Bush, Secretary Rumsfeld, and predecessors of Hood and Bumgarner, respectively, Brigadier General Michael Lenhert and Colonel Terry Carrico, have proclaimed that the United States may hold the detainees indefinitely under their current conditions.  <u>See</u>, <u>e.g.</u>, Roland Watson, British Team to Question Cuba Detainees; War on Terror, The Times (London), Jan. 18, 2002, at 4 ("Donald Rumsfeld, the US Defence Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, <u>More Scrutiny Over Suspects' Treatment</u>, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . .  'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . ."), <u>available</u> at http://www.seacoast newspapers.com/2002news/1_22_w1.htm (last visited Dec. 1, 2005); John Mintz, Extended Detention in Cuba Mulled, Wash. Post, Feb. 13, 2002, at A16 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come."), available at http://www.latinamericanstudies. org/cuba/mulled.htm (last visited Dec. 1, 2005).

38.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo Bay indefinitely.  <u>See</u> Department of Defense Press Background Briefing of July 3, 2003, <u>available</u> at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Dec. 1, 2005).

39.     Respondents' counsel have consistently maintained that the United States has reserved the right to hold the detained prisoners, including Petitioner, under their current conditions indefinitely.  See In re Guantanamo Detainee Cases, Nos. 02-CV-00299 (CKK) *et al*., (D.D.C.), Tr. of Dec. 1, 2004, Or. Argument on Mot. to Dismiss, at 22-24 (statements of Principle Deputy Assoc. Atty. Gen. Brian Boyle); see also Dana Priest, Long-Term Plan Sought for Terror Suspects, Wash. Post, Jan. 2, 2005, at Al, available at http://www.washington post.com/wp-dyn/articles/A41475-2005Jan1.html (last visited Dec. 1, 2005).  In fact, Respondents have failed to release detainees even *after* they have been found to be non-enemy combatants by the Combatant Status Review Tribunals.[3]  Furthermore, the United States has acknowledged plans to begin constructing a new, more permanent facility at Guantánamo Bay. Christopher Cooper, In Guantanamo, Prisoners Languish in a Sea of Red Tape, Wall St. J. (Eastern), Jan. 26, 2005, at Al; Paisley Dodds, Guantanamo Takes on Look of Permanency, Assoc. Press, Jan. 9, 2005, available at http://scoop.agonist.org/story/2005/1/9/14725/47647 (last visited Dec. 1, 2005).

## F.  Rendition

40.     During interrogations, detainees have also been threatened with "rendition," or transfer to countries that routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by means of torture.  See Craig Whitlock, New

---

[3] See Robin Wright, Chinese Detainees Are Men Without a Country;15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go, Wash. Post, August 24, 2005, at A1 (Final Ed.), available at http://www.washingtonpost.com/wp-dyn/ content/article/2005/08/23/AR2005082301362.html (last visited Dec. 1, 2005); Ben Fox, U.S. to Ease Conditions for Some Detainees, Allow Phone Calls, Assoc. Press, Aug. 11, 2005, available at http://www.freenewmexican.com/news/31136.html (last visited Dec. 1, 2005).

<u>Swedish Documents Illuminate CIA Action:  Probe Finds 'Rendition' Of Terror Suspects Illegal</u>, Wash. Post, May 21, 2005, at A1, <u>available</u> <u>at</u> http://www.washingtonpost.com/wp-dyn /content/article/2005/05/20/AR2005052001605.html (last visited Dec. 1, 2005); Jane Mayer, <u>Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program</u>, The New Yorker, Feb. 14, 2005, at 106, <u>available</u> <u>at</u> http://www.newyorker.com/fact/content/ ?050214fa_fact6 (last visited Dec. 1, 2005).

      41.      Various major American and international news organizations have documented the United States' practice of rendition, including, among others, The New York Times, Washington Post, Los Angeles Times, and British Broadcasting Corporation ("BBC"). According to news accounts:

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics—including torture and threats to families—that are illegal in the United States, the sources said.  In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chandrasekaran & Peter Finn, <u>U.S. Behind Secret Transfer of Terror Suspects</u>, Wash. Post, Mar. 11, 2002, at Al, <u>available</u> <u>at</u> http://www.infowars.com/saved%20pages/ Police_state/torture_wapost.htm (last visited Dec. 1, 2005); <u>see</u> <u>also</u> Dana Priest, <u>Long Term Plan Sought for Terror Suspects</u>, Wash. Post, Jan. 2, 2005, at Al ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers."), <u>available</u> <u>at</u> http://www.washingtonpost. com/wp-dyn/articles/A41475-2005Jan1.html (last visited Dec. 1, 2005).

      42.      In fact, the United States Government has recently announced its intention to render many Guantánamo Bay detainees to countries that have a poor record of respecting

human rights, and which engage in torture.[4]  Furthermore, upon information and belief, the government is conditioning such rendering of detainees to their home countries on the requirement that the home country imprison the detainee, without regard to the detainee's individual factual or legal situation.[5]

43.    Moreover, the Washington Post reports that it has confirmed that the Central Intelligence Agency is holding prisoners in secret prisons in Eastern Europe, referred to as "black sites" in United States government documentation.  In these facilities, which "were built and are maintained with congressionally appropriated funds," prisoners are "[k]ept in dark, sometimes underground cells, [and] have no legal rights, and no one outside the CIA is allowed to talk with or even see them."  Dana Priest, CIA Holds Terror Suspects in Secret Prisons:  Debate is Growing Within Agency About Legality and Morality of Overseas System Set Up After 9/11, Wash. Post, Nov. 2, 2005 at A1, available at http://www.washingtonpost.com /wp-dyn/content/article/2005/11/01/AR2005110101644.html (last visited Dec. 1, 2005).  The Washington Post also reports that some of these secretly held individuals have been at Guantánamo Bay.  Id.

44.    Upon information and belief, Petitioner is at risk of being rendered without lawful procedures to a country that engages in torture during interrogations and incarceration.

---

[4] See, e.g., Matthew Waxman, Beyond Guantanamo, Wash. Times Aug. 20, 2005, at A17, available at http://www.washingtonpost.com/wp-dyn/content/article/2005/08/19/ AR2005081901461.html (last visited Dec. 3, 2005); Robin Wright & Josh White, U.S. Holding Talks on Return of Detainees:  Administration Close to Reaching Agreements With 10 Muslim Governments, Wash. Post, Aug. 9, 2005, at A13; Neil Lewis, available at http://www.washingtonpost.com/wp-dyn/content/article/2005/08/08/AR2005080801266.html (last visited Dec. 3, 2005), Guantánamo Detention Site Is Being Transformed, U.S. Says, N.Y. Times, Aug. 6, 2005, at A8 (Late Ed.); Paul Richter, U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay, L.A. Times, Aug. 5, 2005, at A18.

[5] See Wright & White, supra; BBC Worldwide Monitoring, USA to Release 107 Yemenis from Guantanamo Bay, Aug. 10, 2005 ("The US authorities declared few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.") (alterations in original).

## IV.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION— UNLAWFUL DEPRIVATION OF LIBERTY**

45.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

46.    By the actions described above, Respondents, acting under color of law, have violated, and continue to violate, common-law principles of due process, as well as the Due Process Clause of the Fifth Amendment to the United States Constitution.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals without due process of law, and the remaining Respondents have implemented those orders.  Respondents' actions deny Petitioner the process accorded to persons seized and detained by the United States armed forces in times of armed conflict as established by, among other things, the Uniform Code of Military Justice ("UCMJ"), available at http://www.constitution.org/mil/ucmj19970615.htm (last visited Dec. 1, 2005), Army Regulation 190-8, Articles 3 and 5 of the Geneva Convention Relative to the Treatment of Prisoners of War ("Third Geneva Convention"), Aug. 12, 1949, 6 U.S.T. 3316, and the Geneva Convention Relative to the Protection of Civilian Persons in Times of War ("Fourth Geneva Convention"), Feb. 2, 1956, 6 U.S.T. 3516, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

17

47.    To the extent that the Executive Order purports to authorize Petitioner's detention, the Executive Order violates the Fifth Amendment of the United States Constitution on its face and as applied to Petitioner.

48.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION— UNLAWFUL CONDITIONS OF CONFINEMENT

49.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

50.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate Petitioner's right to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

51.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### GENEVA CONVENTIONS—ARBITRARY DENIAL OF DUE PROCESS

52.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

53.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict, as established by specific provisions of the Third and Fourth Geneva Conventions, supra.

54.     Violations of the Geneva Conventions are direct treaty violations, violate customary international law, and give rise to an enforceable claim by Petitioner under 28 U.S.C. § 2241(c)(3).

55.     Respondents are liable for the conduct described above, because they set the conditions at Guantánamo Bay, and directly or indirectly facilitated, ordered, acquiesced, confirmed, ratified, or conspired to violate the Third and Fourth Geneva Conventions, supra.

56.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FOURTH CLAIM FOR RELIEF

### INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW— ARBITRARY DENIAL OF DUE PROCESS

57.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

58.     By the actions described above, Respondents have denied and continue to deny Petitioner the process due to persons seized and detained by the United States armed forces in times of armed conflict, as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—TORTURE

60.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

61.     Upon information and belief, Respondents directed, ordered, confirmed, ratified, or conspired together, and with others, to bring about acts that deliberately and intentionally

19

inflicted severe physical and psychological abuse and agony upon detainees, in order to obtain coerced information or confessions from detainees, to punish or intimidate detainees, or for other purposes. Upon information and belief, such abuses include, among other things, placing detainees in constant vulnerability to repeated interrogation and severe beatings; keeping detainees in cages with no privacy; shackling detainees with heavy chains and irons; subjecting detainees to solitary confinement or the threat of solitary confinement for prolonged periods of time for minor rule infractions; interrogating detainees while shackled and chained in painful positions; exposing detainees to extremes of temperature; subjecting detainees to violent behavior or the threat of violence; threatening detainees with rendition to countries that practice torture; sexually humiliating detainees; denying detainees access to counsel and family; depriving detainees of adequate medical care; and subjecting detainees to repeated psychological abuse.

62.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

63.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, or conspired together, and with others, to commit the acts of torture against detainees.

64.    Upon information and belief, Petitioner was, and continues to be, subject to the same physically and psychologically abusive conditions as other detainees, and is entitled to habeas corpus, declaratory, and injunctive relief and other relief that this Court may deem appropriate.

## SIXTH CLAIM FOR RELIEF

## ALIEN TORT STATUTE—WAR CRIMES

65.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

66.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, or conspiring to bring about the torture and other inhumane treatment of detainees constitute war crimes or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate, among other things, the Fourth Geneva Convention, supra, Common Article III of the Geneva Conventions, Aug. 12, 1949, 6 U.S.T. 3316, and Additional Protocols I and II to the Geneva Conventions of August 12, 1949 ("Protocols I and II"), reprinted in, 16 Int'l.Leg.Mats. 1391, 1442 (1977), as well as customary international law prohibiting war crimes as reflected, expressed, and defined in multilateral treaties and international instruments, international and domestic judicial decisions, and other authorities.

67.    As a result of Respondents' unlawful conduct, upon information and belief, detainees have been and are being forced to suffer severe physical and psychological abuse and agony.  Furthermore, upon information and belief, Petitioner was, and continues to be, subject to the same conditions as other detainees, and therefore is entitled to habeas corpus, declaratory, and injunctive relief, and such other relief that this Court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

## ALIEN TORT STATUTE—CRUEL, INHUMAN OR DEGRADING TREATMENT

68.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

21

69.    Upon information and belief, Respondents' acts described herein intentionally and grossly humiliated and debased detainees, forced detainees to act against their respective wills and consciences, filled detainees with fear and anguish, and broke detainees physically, psychologically, or morally.

70.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, or conspired together, and with others, to cause the cruel, inhuman or degrading treatment of detainees.

72.    Upon information and belief, Petitioner was, and continues to be, subject to the same severe physical and psychological abuse and agony as other detainees, and is entitled to habeas corpus, declaratory, and injunctive relief, as well as other relief that this Court deems just.

## EIGHTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION

73.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

74.    The acts described herein constitute arbitrary arrest and detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, or conspired together, and with, others to bring about the arbitrary arrest and prolonged arbitrary detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

76.     As a result of Respondents' unlawful conduct, detainees have been, and are being, deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Furthermore, upon information and belief, Petitioner is subject to the same conditions as other detainees, and is therefore entitled to habeas corpus, declaratory, and injunctive relief, and such other relief that this Court may deem appropriate.

## NINTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—ENFORCED DISAPPEARANCE

77.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

78.     By the actions described above, Respondents directed, ordered, confirmed, ratified, or conspired to bring about the enforced disappearance of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that Respondents' actions violate customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

79.     As a result of Respondents' unlawful conduct, detainees have been, and are being, deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Upon information and belief, Petitioner is subject to the same conditions as other

detainees, and therefore is entitled to habeas corpus, declaratory, and injunctive relief, and such other relief that this Court may deem appropriate.

### TENTH CLAIM FOR RELIEF

### ARTICLE II OF THE UNITED STATES CONSTITUTION— UNLAWFUL DETENTION

80.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

81.    The United States has not shown that Petitioner is, or was, an enemy alien, a lawful or unlawful belligerent, or a combatant of any kind.  The executive branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory, or civilians who were not "carrying a weapon against American troops on a foreign battlefield." Hamdi, 124 S. Ct. at 2642 n.l.

82.    By the actions described above, President Bush has exceeded and continues to exceed the executive's authority under Article II of the United States Constitution by authorizing, ordering, and directing that military officials seize detainees and transfer them to military detention, and by authorizing and ordering the continued military detention of detainees at Guantánamo Bay.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, or supervising the seizure and military detention of detainees.

83.    President Bush's Executive Order authorizing the military seizure and detention of detainees by the Respondents is ultra vires and illegal, because it exceeds the executive's authority under Article II of the United States Constitution.  Accordingly, the Executive Order is void on its face, and as applied to Petitioner.

84.    To the extent that Respondents assert that their authority to detain Petitioner derives from a source other than the Executive Order, including, without limitation, the executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of

the United States Armed Forces, whether from Article II of the United States Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

85.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief that this Court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF

### APA—ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION

86.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

87.     The UCMJ governs the detention of persons by the United States armed forces. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory, or who were not engaged in combat against the United States. See Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

88.     By arbitrarily and capriciously detaining Petitioner in military custody, Respondents have acted and continue to act ultra vires and unlawfully in violation of Army Reg. 190-8 and the UCMJ.

89.     Respondents' violation of Army Regulation 190-8 and the UCMJ gives rise to a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq..

90.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

### APA—ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS

91.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

92.     By the actions described above, Respondents, acting under color of law, have violated the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*, by arbitrarily and capriciously denying Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the UCMJ and Army Regulation 190-8.

93.     Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief that this Court many deem appropriate.

### THIRTEENTH CLAIM FOR RELIEF

### APA—TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT

94.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     By the actions described above, Respondents have violated the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*, by acting and continuing to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, or conspiring to unlawfully subject detainees to torture or cruel, inhuman or degrading treatment in violation of the UCMJ and Army Regulation 190-8.  Upon information and belief, Petitioner is subject to the same conditions as other detainees.

96.     Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief that this Court may deem appropriate.

### FOURTEENTH CLAIM FOR RELIEF

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION—UNLAWFUL RENDITION

97.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

98.     Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture

constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

99.    Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief that this Court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

### CONVENTION AGAINST TORTURE, CONVENTION RELATING TO THE STATUS OF REFUGEES AND GENEVA CONVENTIONS —UNLAWFUL RENDITION

100.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of his rights under the Third and Fourth Geneva Conventions, supra, the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("Convention Against Torture"), Dec. 10, 1984, G.A.Res. 46, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984), and the 1954 Convention Relating to the Status of Refugees, supra.

102.    Accordingly, Petitioner is entitled to habeas corpus, declaratory and injunctive relief, as well as any other relief that this Court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### ALIEN TORT STATUTE—UNLAWFUL RENDITION

103.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture

constitutes a violation of his rights under 28 U.S.C. §§ 2241 and 2242, and under customary international law.  Petitioner is entitled to vindicate these rights under the Alien Tort Statute, 28 U.S.C. § 1350.

105.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

## VIOLATION OF THE RIGHT TO COUNSEL AND ACCESS TO THE COURTS

106.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

107.    Respondents consistently have contrived to intrude upon detained Petitioners' right to consult with counsel by conditioning counsel's access to detainees on unreasonable terms, including classification/declassification procedures, in violation of Petitioner's attorney-client privilege, work product privilege, right to counsel, and right to due process.

108.    Accordingly, Petitioner is entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief and requests that this Court:

1.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioner from his current unlawful detention;

2.    Order that Petitioner be brought before the Court to vindicate his rights;

3.    Order that Petitioner cannot be transferred to any other country without the knowing consent and written agreement of Petitioner (obtained voluntarily and without duress) and Petitioner's counsel while this action is pending;

4.    Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

5.    Order Respondents to allow counsel to meet and confer with Petitioner in private, and to engage in unmonitored attorney-client conversations;

6.      Order Respondents to cease all interrogations of Petitioner, direct or indirect, while this litigation is pending;

7.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner;

8.      Order and declare the Executive Order ultra vires and unlawful as applied to Petitioner;

9.      Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner without due process is arbitrary and unlawful and a deprivation of liberty without due process; and

10.     Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, international law and the treaties to which the United States is a party.

Dated:  December 6, 2005.

Respectfully submitted,

/s/ Steven F. Hubachek
/s/ Heather R. Rogers
/s/ Zaki Zehawi
Steven F. Hubachek (Cal Bar No. 147703)
Heather R. Rogers (Cal. Bar No. 229519)
Zaki Zehawi (Cal. Bar No. 216485)
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Counsel for Petitioner