## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GHALEB NASSAR AL BIHANI,           )
                                   )
          Petitioner,              )
                                   )
    v.                             )       Civil Case No.  05-1312 (RJL)
                                   )
BARACK H. OBAMA, *et al.*,          )
                                   )
          Respondents.             )

## MEMORANDUM ORDER
(January **28**, 2009)

Petitioner, Ghaleb Nassar Al Bihani ("petitioner" or "Al Bihani"), is a detainee

being held at the U.S. Naval Base at Guantanamo Bay, Cuba.  He alleges that he is being

unlawfully detained by Respondents President Barack H. Obama,[1] Secretary of Defense

Robert M. Gates, Army Brigade General Jay Hood, and Army Colonel Nelson J. Cannon

(collectively "respondents" or the "Government").  On January 15, 2009, the Court

commenced habeas corpus hearings for petitioner Al Bihani.  That morning, counsel for

both parties made unclassified opening statements in a public hearing.  Petitioner Al

Bihani listened to a translation of the opening statements via a live telephone

transmission to Guantanamo Bay, Cuba.

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a
party to an action in his official capacity ceases to hold office, the court will automatically
substitute that officer's successor.  Accordingly, the Court substitutes Barack H. Obama for
George W. Bush, and Robert M. Gates for Donald H. Rumsfeld.

Thereafter, the Court went into a closed door session to hear each side present opening statements that included relevant classified information.  Upon completion of those statements, each side presented its evidence and arguments regarding various material issues of fact in dispute between the parties.  That presentation was not quite completed by the early evening of January 15, 2009, so the Court reconvened the next morning.  After counsels' presentation was completed, petitioner Al Bihani decided not to testify on his own behalf.  Thereafter the Court heard the closing arguments of the parties.  At the end of those arguments, the Court informed the parties that it would hold a public hearing to announce its decision within the next ten days.  A classified version of this opinion, setting forth in greater detail the Court's reasoning, will be distributed through the Court Security Office next week, together with the Final Judgment.

Before stating the Court's ruling, a brief statement of the relevant factual and procedural history is appropriate.

## BACKGROUND

Petitioner Al Bihani, a citizen of Yemen and a native of Saudi Arabia (Unclassified Opening at 7:2-4), left home sometime in or around May 2001 in response to a fatwa (religious decree) issued by a local Sheikh to fight jihad in support of the Taliban against the Northern Alliance.  (*Id.* at 17:6-8.)  Petitioner traveled first to Pakistan, where he was met by a family friend who escorted him to Afghanistan.  (*Id.* at 17:14-23.)  In Kwajah Ghar, Al Bihani allegedly received military training at an al Qaida camp, and then joined a military unit, the 55th Arab Brigade.  (*Id.* at 11:3-24, 17:24-18:21; Unclassified Factual Return Narrative at 11.)  That unit engaged in military

2

operations against the Northern Alliance near Khwajeh Ghar, Afghanistan.  In late November 2001, Al Bihani retreated with his unit after the initiation of bombing by the U.S. and allied forces.  (Unclassified Opening at 19:3-9.)  They regrouped at a guest house near the Pakistani boarder and eventually surrendered to a Northern Alliance commander.  (*Id.*)  After a series of detentions at different facilities, Al Bihani was given over to the U.S. Forces in June 2002.  (Unclassified Factual Return Narrative at ¶ 32 [Dkt. #83-2]; Unclassified Opening at 14:24-25--15:1-11.)  He was transferred thereafter to Guantanamo where he has remained since his arrival.

In the aftermath of the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (holding that 28 U.S.C. § 2241 extended statutory habeas jurisdiction to Guantanamo), petitioner Al Bihani filed his habeas corpus petition with the Court on June 30, 2005.  (Pet. for Writ of Habeas Corpus [Dkt. #1].)  As with the hundreds of other petitions filed around that time, no action was taken by the Court on that petition until the Supreme Court finally ruled on June 12, 2008, in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), that Guantanamo detainees are "entitled to the privilege of habeas corpus to challenge the legality of their detention."  *Id*. at 2262.

In the month that followed the *Boumediene* decision, this Court met with counsel in Al Bihani's case on two occasions to discuss issues unique to his case and procedural issues attendant to the habeas process.  On July 30, 2008, this Court ordered the respondents to file their Factual Return for petitioner Al Bihani by November 24, 2008.  (Briefing and Scheduling Order, July 31, 2008 [Dkt. #53].)  Respondents complied with that order.

On November 28, 2008, the Court issued its Case Management Order (CMO) for the case. (CMO [Dkt. #79].) That order was essentially identical to the earlier CMO issued by the Court in *Boumediene v. Bush*, No. 04-cv-1166, on August 27, 2008. On December 4, 2008, the Court met with counsel in chambers to discuss any issues raised after reviewing the Factual Return.

On December 5, 2008, the Government filed an unclassified version of its Factual Return. (Notice of Filing of Unclassified Return [Dkt. #83].) Petitioner's counsel had filed a motion for leave to take discovery the preceding day, making fourteen separate requests for admissions and documents. (Notice of Documents Previously Filed with the Court Security Office [Dkt. #87].) The Court held a discovery hearing on December 11, 2008, and granted one of petitioner's requests.

On January 2, 2009, petitioner Al Bihani filed his initial Traverse setting forth the factual basis for his opposition to the Government's return. (Notice of Documents Previously Filed with the Court Security Office [Dkt. #87].) On January 9, 2009, Petitioner filed a supplement to his Traverse. On the same day, the Court held a pre-hearing conference with counsel to identify the material issues of fact in dispute between the parties and to discuss any legal or procedural issues that needed to be resolved before the habeas hearing commenced. On January 13, 2009, petitioner filed a second supplement to his Traverse. The Government filed a Pre-Hearing Memorandum in Response to Petitioner's Traverse on January 13, 2009, and the Petitioner responded on January 14, 2009.

4

Based on a careful review of the Factual Return and the Traverse, and after a day and a half of hearings on the factual issues in dispute and the oral arguments of the parties, the following is the Court's ruling on petitioner Al Bihani's petition.

## LEGAL STANDARD

Under the CMO, the Government bears the burden of proving, "by a preponderance of the evidence, the lawfulness of the petitioner's detention." (CMO, ¶ II.A.) The Government argues that petitioner is lawfully detained because he is an "enemy combatant," who can be held pursuant to the Authorization for Use of Military Force and the President's powers as Commander in Chief.[2]  The following definition of "enemy combatant," previously adopted by this Court in the *Boumediene* cases, governs the proceedings in this case:

> An "enemy combatant" is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

*Boumediene v. Bush*, 2008 WL 4722127, at *2 (D.D.C. Oct. 27, 2008).  Accordingly, the question before this Court is whether the Government has shown by a preponderance of

---

[2]      In response to the September 11th terrorist attacks, Congress passed a joint resolution authorizing the President to:
> [U]se all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, §§ 2(a), 115 Stat. 224 (Sept. 18, 2001).

the evidence that petitioner Al Bihani is being lawfully detained—*i.e.*, that he is an "enemy combatant" under the definition adopted by this Court.

## ANALYSIS

The Government contends that petitioner Al Bihani is an enemy combatant under the definition adopted by this Court in *Boumediene* because he was "part of or supporting Taliban or al Qaeda forces." *Boumediene*, 2008 WL 4722127 at *2. In particular, respondents allege that petitioner Al Bihani: (1) stayed at an al Qaeda affiliated guesthouse in Afghanistan; (2) received military training at an al Qaeda affiliated training camp, and (3) supported the Taliban in its fight against the Northern Alliance and U.S. forces as a member of the 55th Arab Brigade.

Petitioner Al Bihani, not surprisingly, disagrees. While he admits to traveling to Afghanistan to fight jihad on behalf of the Taliban against the Northern Alliance, he claims he was never a member of the Taliban or al Qaeda, and he denies ever intending to take up arms against U.S. forces. (Unclassified Opening at 7:23-8:5.) Moreover, he claims to have been a mere cook in the 55th Arab Brigade, and in 2004 he denied ever receiving military training, (Unclassified Opening at 12:14), notwithstanding the fact that he had previously and subsequently admitted to doing so on numerous occasions. For the following reasons the Court concludes that the Government has met its burden under the Case Management Order and will DENY Al Bihani's petition for a writ of habeas corpus.

The Government's evidence is a combination of certain statements of the petitioner that the Court finds credible and certain classified documents that help establish the most likely explanation for, and significance of, petitioner's conduct. Due

to the unclassified nature of this proceeding, however, the Court is limited to the
following explanation of the factual basis of the Government's case.

First, with respect to staying at particular al Qaeda affiliated guesthouses in
Afghanistan, the Government was able to establish this allegation by a preponderance of
the evidence by relying primarily on petitioner's own admissions. (*See* Unclassified
Opening at 17:24-18:9.) The Court finds these admissions to be credible and consistent
not only with respect to his visits, but also with his overall trip to Afghanistan to
participate in jihad on behalf of the Taliban against the Northern Alliance.

Next, with respect to the Government's allegations that petitioner attended two al
Qaeda affiliated training camps (i.e. al Farouq and Khalid bin Al Walid), the Court is
posed with the novel dilemma of choosing between two diametrically opposed accounts
by petitioner about receiving military training; the second of which being a wholesale
recantation of the first. (GEx. 49 at 4 [Dkt. #83-4].) In particular, from January 2002 to
June 2005, petitioner consistently acknowledged in numerous interrogation sessions that
he had attended both of these al Qaeda affiliated training camps as a part of his
preparation to join the 55th Arab Brigade. Indeed, on a number of occasions he described
in significant detail the training regiment, method of instruction, and instructors at these
camps. In June of 2006, however, he suddenly reversed course when he testified as part
of his ARB hearing that he had *never* received military training at any time. (GEx. 49 at
4-5 [Dkt. #83-4].) Curiously, in an interrogation session after his ARB proceeding, he
reversed course once again and acknowledged attending these military training camps.
While it is tempting to resolve this dispute on behalf of the Government by accrediting,

as a matter of common sense, Al Bihani's longstanding and consistent admission to attending those camps, the Court will refrain from doing so as unnecessary in light of the overwhelming and consistent testimony of the petitioner in support of the Government's third allegation.

As stated previously, the Government's final, and most telling, allegation is that the petitioner, as a member of the 55th Arab Brigade fighting unit, "supported" the Taliban in its fight against the Northern Alliance both prior to and after the initiation of force by the U.S. in October 2001.  In that regard, however, petitioner strongly contends that his service in the 55th Arab Brigade was limited to serving as a cook and kitchen aid to its 150-plus fighters.  Although he acknowledges being assigned a rifle and ammunition, (Unclassified Opening at 18:13), Al Bihani contends that he never fired the rifle in a battle against the Northern Alliance, let alone the United States and its allied forces.  Unfortunately petitioner misconstrues the concept of "support" inherent in the enemy combatant definition.  It is not necessary, as this Court ruled previously in the Al Alwi case (*Ghazy et al. v. Bush et al.*, No. 05-2223, Dkt. # 107 at 8 (D.D.C., filed Nov. 15, 2005)), that petitioner actually fire a weapon against the U.S. or coalition forces in order for him to be classified as an enemy combatant under the definition adopted by this Court.  Petitioner has not only admitted to serving under an al Qaeda military commander, but his close ties to Taliban and al Qaeda affiliated forces as a member of the Arab Brigade unit, albeit in a non-front-line capacity, is more than enough.  Indeed, it is particularly telling that when he finally retreated from the front lines, he did so only: (1) after the U.S. had commenced its bombing campaign against the Taliban; (2) in

8

response to an order from his commander; (3) with Taliban forces, in Taliban trucks, and armed with his Taliban-issued Kalashnikov rifle; and (4) to a designated guesthouse where the unit went to regroup in preparation for its next mission. (GEx. 6 at 7-10.) Of course, it was at that location, that his unit commander ultimately decided to surrender to the Northern Alliance troops headed by General Dostum. (GEx. 6 at 10.) Simply stated, faithfully serving in an al Qaeda affiliated fighting unit that is directly supporting the Taliban by helping to prepare the meals of its entire fighting force is more than sufficient "support" to meet this Court's definition. After all, as Napoleon himself was fond of pointing out: "an army marches on its stomach."

Thus, based on the evidence presented by the Government and all reasonable inferences drawn therefrom, the Court concludes that petitioner Al Bihani is being lawfully detained as an enemy combatant because it is more probable than not that he was "part of or supporting Taliban or al Qaeda forces" both prior to and after the initiation of U.S. hostilities in October 2001. Accordingly, the Court must, and will, DENY Al Bihani's petitioner for a writ of habeas corpus and will not order his release.

## CONCLUSION

For all the foregoing reasons, and for the reasons in the forthcoming classified version of this opinion, it is hereby

**ORDERED** that petitioner Al Bihani's petition for writ of habeas corpus is **DENIED**.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge